IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOM MCREYNOLDS, et al.,

        Plaintiffs,

vs.                                                                 No. 12-cv-0097 MCA/WDS

JIM LANE, in his official capacity as
DIRECTOR OF THE NEW MEXICO
DEPARTMENT OF GAME AND FISH,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiffs' Motion for a Preliminary Injunction. [Doc. 2]   The Court has considered the written submissions of the parties, the evidence presented at the hearing on this motion, the oral arguments and representations of counsel, and the Court's own research and analysis of the law, and is otherwise fully advised. This Memorandum Opinion and Order incorporates and supplements the findings and rulings announced by Court on Thursday, March 22, 2012, at the hearing on Plaintiffs' motion.

**Background**

Plaintiffs are various individuals and business entities engaged in the business of outfitting and guiding who seek to do business in New Mexico. Defendant is the Director of the New Mexico Department of Game and Fish ("the Department").  Plaintiffs challenge the following statute:

> B.  Beginning with the licenses issued from a special drawing for a hunt code that commences on or after April 1, 2012:
>
>     (1) licenses shall be issued as follows:

    (a) ten percent of the licenses to be drawn by nonresidents and residents who will be contracted with a New Mexico outfitter prior to application; and

    (b) six percent of the licenses to be drawn by nonresidents who are not required to be contracted with an outfitter; and

  (2) a minimum of eighty-four percent of the licenses shall be issued to residents of New Mexico.

. . . .

H. As used in this section, "New Mexico outfitter" means a person who has a business:

  (1) with a valid New Mexico state, county or municipal business registration and a valid outfitter license issued by the department of game and fish;

  (2) that is authorized to do and is doing outfitting business under the laws of this state;

  (3) that has paid property taxes or rent on real property in New Mexico, paid gross receipts taxes and paid at least one other tax administered by the taxation and revenue department in each of the three years immediately preceding the submission of an affidavit to the department of game and fish;

  (4) the majority of which is owned by the person who has resided in New Mexico during the three-year period immediately preceding the submission of an affidavit to the department of game and fish;

  (5) that employs at least eighty percent of the total personnel of the business who are New Mexico residents;

  (6) that has either leased property for ten years or purchased property greater than fifty thousand dollars ($50,000) in value in New Mexico;

  (7) that, if it has changed its name from that of a previously certified business, the business is identical in every way to the previously certified business that meets all criteria;

  (8) possesses all required federal or state land use permits for the hunt; and

>      (9)  that operates as a hunting guide service during which at least two days are accompanied with the client in area where the license is valid.

NMSA 1978, § 17-3-16.

The prior version of § 17-3-16 also included a quota of licenses set aside for hunters guided by New Mexico outfitters:

> B.  Beginning with the licenses issued from a special drawing for a hunt code on public lands that commences on or after April 1, 1997:
>
>  (1) twenty-two percent of the licenses shall be issued to nonresidents divided as follows:
>
>> (a) twelve percent of the licenses to be drawn by nonresidents who will be guided by a New Mexico outfitter or guide; and
>>
>> (b) ten percent of the licenses to be drawn by nonresidents who are not required to be guided by a New Mexico outfitter or guide; and
>
>  (2)  seventy-eight percent of the licenses shall be issued to residents of New Mexico.

However, prior law did not impose the requirements set out in subsection H.  Thus, a nonresident could become a registered New Mexico outfitter and qualify for the percentage of draws set aside for guided hunts simply by satisfying the same requirements demanded of a New Mexico resident seeking to become a registered outfitter.  NMSA 1978, § 17-2A-3.  According to the Plaintiffs, the additional requirements imposed on nonresident outfitters by subsection H, and more particularly by paragraphs 3-6 of subsection H, have the practical effect of categorically excluding nonresident outfitters from participating in the ten percent of guided hunts set aside by the new version of  subsection B(1)(a).

Plaintiffs argue that subsection H violates their rights under the dormant Commerce Clause[1] and the Privileges and Immunities Clause[2] of the Constitution.

**Whether Plaintiffs Have Established Article III Standing**

Before proceeding to the merits of Plaintiff's motion, the Court must first satisfy itself that at least one Plaintiff has Article III standing to assert each of Plaintiffs' claims. *Utah Assn. of Counties v. Bush*, 455 F.3d 1094, 1098-99 (10th Cir. 2006) (discussing constitutional necessity of standing analysis); *American Civil Liberties Union of New Mexico v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir. 2008) (citing *Crawford v. Marion County Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) for proposition that where only injunctive relief is sought, only one plaintiff must demonstrate standing); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) (observing that plaintiffs must have standing to seek "each form of relief in each claim").  To satisfy the requirement of standing "a plaintiff must establish three elements:  an injury-in-fact, causation, and redressability." *Bronson*, 500 F.3d at 1106.

Clearly, imminent economic injury may suffice to establish injury-in-fact for standing purposes. *Sac and Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000). The inability to pursue a common calling as the result of state action can constitute the requisite injury-in-fact for purposes of either the dormant Commerce Clause, *Conservation Force, Inc. v. Manning*, 301 F.3d 985 (9th Cir. 2002), or the Privileges and Immunities Clause, *McBurney v. Cuccinelli, II*, 616 F.3d 393, 404 (4th Cir. 2010). The denial of a nonresident's right to do

---

[1] U.S. Const. Art. 1, § 8, cl. 3 is commonly known as the Commerce Clause. The dormant Commerce Clause is a body of judicial precedent derived by negative implication from the Commerce Clause. *McBurney v. Young*, 667F.3d 454, 468 (4th Cir. 2012).

[2] U.S. Const., Art. 4, § 2, cl. 1

business on the substantially equal terms with residents can constitute an injury-in-fact for purposes of standing. *Council of Ins. Agents and Brokers v. Molasky-Arman*, 522 F.3d 925, 932-33 (9th Cir. 2008) (upholding standing to assert claim under Privileges and Immunities Clause); *see also Schutz v. Thorne*, 415 F.3d 1128 (10th Cir. 2005) (upholding standing to assert claim under Equal Protection Clause).

The Court finds that testimony of Tom McReynolds establishes that his company, Black Mountain Outfitters, Inc., has suffered injury-in-fact, *i.e.* economic loss, as the result of the inability to compete with resident outfitters for clients interested in subsection B(1)(a) draw hunts. The testimony of Jody Tapia, d/b/a/ Bucks-N-Bulls Outfitters, establishes that he has suffered an injury-in-fact, *i.e.* economic loss, as the result of the inability to compete with resident outfitters for clients interested in subsection B(1)(a) draw hunts. Alternately, the Court finds that Plaintiffs have suffered an injury-in-fact by being unlawfully discriminated against on the basis of nonresidence.

The Court further finds based upon the testimony Tom McReynolds and Jody Tapia, that Black Mountain Outfitters, Inc., and Jody Tapia are otherwise qualified to engage in the business of outfitting in New Mexico, have had willing and able clients in the past, and would have had a reasonable expectation of having willing and able clients for 2012 but for the enactment of subsection H, ¶¶ (3) through (6). The Court finds that the enactment of subsection H, ¶¶ (3) through (6), is the cause of Plaintiffs' injury-in-fact.

Lastly, the Court finds that the injury to Plaintiffs is redressable by an injunction restraining Defendant from applying subsection H, ¶¶ (3) through (6), to Plaintiffs.

Plaintiffs have satisfied the requirements of Article III standing.

**Whether Plaintiffs are Entitled to a Preliminary Injunction**

Counsel for Plaintiff conceded at the hearing on Plaintiffs' motion that Plaintiffs are requesting a mandatory injunction. The standards governing a mandatory preliminary injunction are as follows:

> To obtain a preliminary injunction, the moving party must demonstrate: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." [The Tenth Circuit Court of Appeals] consider[s] a preliminary injunction to be an extraordinary remedy, and has caution[ed] courts against granting injunctions that alter the status quo or that require the "nonmoving party to take affirmative action–a mandatory preliminary injunction–before a trial on the merits occurs." Because mandatory preliminary injunctions are disfavored, before a district court may grant such relief, the movant must make a heightened showing of the above four factors. . . . .

*Att'y Gen. of the State of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir.2009) (citations omitted).[3]

Defendant argues that relief under the dormant Commerce Clause is barred by the Reaffirmation of State Regulation of Resident and Nonresident Hunting and Fishing Act, P.L. 109-52, § 6063 (the "2005 Act"). The 2005 Act states:

(b) Declaration of Policy and Construction of Congressional Silence-

 (1) IN GENERAL.-It is the policy of Congress that it is in the public interest for each State to continue to regulate the taking for any purpose of fish and wildlife within its boundaries, including by means of laws or regulations that differentiate between residents and nonresidents of such State with respect to the availability of licenses or permits for taking of particular species of fish or wildlife, the kind and numbers of fish and wildlife that may be taken, or the fees charged in connection with issuance of licenses or permits for hunting or fishing.

---

[3]The fourth requirement is frequently stated in the negative: *i.e.*, the injunction must not be adverse to the public interest. *E.g.*, *Awad v. Ziriax*, No. 10-6273, 2012 WL 50636 *9 (10th Cir. Jan. 10, 2012).

>    (2)  CONSTRUCTION OF CONGRESSIONAL SILENCE-Silence on the part of Congress shall not be construed to impose any barrier under clause 3 of Section 8 of Article I of the Constitution (commonly referred to as the "commerce clause") to the regulation of hunting or fishing by a State or Indian Tribe.

The 2005 Act was enacted in response to the Ninth Circuit Court of Appeals' opinion in *Conservation Force v. Manning*, 301 F.3d 985 (9th Cir. 2002), a case involving a dormant Commerce Clause challenge to an Arizona statute that reserved a percentage of elk hunting permits for Arizona residents. *Minnesota ex rel. Hatch v. Hoeven*, 456 F.3d 826, 833 (8th Cir. 2006). *Manning* held that the resident permit quota at issue discriminated against interstate commerce and therefore was subject to strict scrutiny under the dormant Commerce Clause. In *Schutz*, our Court of Appeals applied the 2005 Act in finding that a dormant commerce clause challenge to Wyoming's hunting license fee statute, hunting license quota statute, and hunting guide statute were moot as a result of Congress's enactment of the 2005 Act. As the Court of Appeals observed, "[t]he essential element of a successful dormant Commerce Clause claim is congressional inaction, so when Congress does act, the dormancy ends, thus leaving the courts obliged to follow congressional will. Such is the case here." *Schutz*, 415 F.3d at 1138.

　　　　Plaintiffs argue that 2005 Act does not apply in the present context because outfitting is not hunting. The Court is not persuaded by Plaintiffs' argument. Section 17-3-16 is expressly concerned with the issuance of permits for certain hunts. It therefore falls squarely within the policy and the language of the 2005 Act.[4] Further, the activity of outfitting is closely related to

---

[4] Further, even if the Court is incorrect in its reading of the 2005 Act, the question of its applicability to § 17-3-16 is sufficiently serious as to preclude a finding that Plaintiffs are likely to succeed on the merits of their dormant Commerce Clause Claim.

hunting. The Court concludes that Plaintiffs' dormant Commerce Clause claim is precluded by the 2005 Act.

Plaintiffs also argue that Congress cannot enact a statute that nullifies the constitution. [Doc. 15 at 9] As noted above, the dormant Commerce Clause is a judicial gloss on the actual Commerce Clause. The Supreme Court has held with respect to the dormant Commerce Clause that "if Congress ordains that the States may freely regulate an aspect of interstate commerce, any action taken by a State within the scope of the congressional authorization is rendered invulnerable to Commerce Clause challenge." *West. & S. Life. Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 652-53 (1981). Plaintiffs' argument is without merit.

In view of the 2005 Act, which the Court expressly finds applicable to the activities of outfitting and guiding in the context of this case, Plaintiffs have not established a reasonable likelihood of success on their dormant Commerce Clause challenge.

Turning to Plaintiffs' challenge under the Privileges and Immunities Clause, the Court begins by noting that Plaintiffs doing business as corporations and LLCs are not protected by the Privileges and Immunities Clause, the protections of which are limited to individuals. *In re Boggs-Rice Co., Inc. v. Athens Stove Works, Inc.*, 66 F.2d 855, 856 (4th Cir. 1933). Counsel for Plaintiffs conceded as much at the hearing on Plaintiffs' motion.

With respect to non-corporate Plaintiffs, the Court finds a strong likelihood of success on the merits of their Privilege and Immunities challenge to subsection H, ¶¶ (3) through (6).

First, the Court concludes that the occupation of outfitting hunts is a common calling subject to protection under the Privileges and Immunities Clause. The Supreme Court's opinion in *Baldwin v. Fish and Game Comm. of Montana*, 436 U.S. 371 (1978), is not to the contrary.

*Baldwin* makes it clear that a *hunter* cannot bring a successful Privileges and Immunities Clause challenge to a statute like §17-3-16. But Plaintiffs clearly are differently situated than the nonresident recreational hunters in *Baldwin*. Plaintiffs are professional outfitters and guides who make a living outfitting and guiding hunters. The Supreme Court stressed in *Baldwin* that the non-resident recreational hunters "do not–and cannot-contend that they are deprived of a means of a livelihood. . . . " 436 U.S. at 388. Here, Plaintiffs, non-resident professional outfitters, can and do make the claim that their means of livelihood is impaired.[5]

Second, subsection H, ¶¶ (3) through (6), denies non-resident outfitters the opportunity to do business on substantially equal terms with New Mexico resident outfitters with respect to subsection B(1)(a) draw hunts. The Court finds the requirements imposed by paragraphs (3) through (6) to be thinly-veiled "proxies" for residency.[6] See *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1045-46 (10th Cir. 2009).

---

[5]It is true that § 17-3-16 does not prevent nonresidents outfitters and guides from contracting with hunters as to hunts not covered by § 17-3-16, nor does it prevent nonresident outfitters and guides from contracting with hunters as to the hunts covered by subsection B(1)(b) and B(2), which constitute 90% of the hunts covered by § 17-3-16. The fact that § 17-3-16 does not totally foreclose employment by nonresident outfitters and guides is not dispositive: "Nothing in our precedents. . . supports the contention that the Privileges and Immunities Clause does not reach a State's discrimination against nonresidents when such discrimination does not result in their total exclusion from the State." *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 66 (1988).

[6]The legislative strategy underlying subsection H appears to be to identify certain characteristics typical of New Mexico residents, and which therefore place no burden on a typical resident, but would be burdensome for a non-resident, and to designate these common characteristics of residents as requirements that non-resident outfitters must meet. If the requirements are challenged, the State can claim that the requirements are neutral as to residency, as the requirements apply both to residents and nonresidents. *Cf. Chalker v. Birmingham & N. Ry. Co.*, 249 U.S. 522 (1919) (looking to practical effect of statute in determining whether ostensibly neutral classification discriminated against nonresidents).

Third, Defendant failed to demonstrate a legitimate reason justifying the complete exclusion of non-resident outfitters from participation in subsection B(1)(a) draw hunts. A law that burdens one person over another on the basis of state citizenship must be justified by a substantial reason. *C.S. McCrossan Construction, Inc. v. Rahn*, 96 F. Supp. 2d 1238, 1248 (D.N.M. 2000) ("Finding a burden on a protected privilege does not end the inquiry. A statute injuring a person's rights on the basis of state citizenship will be upheld is there is s substantial reason for the dissimilar treatment, bearing a substantial or close relationship to the state's aim.") At the hearing on Plaintiffs' motion, Patrick Block, the Department's assistant director, testified that subsection H was included to lessen the economic harm to local outfitters from the reduction in the quota for outfitted hunts and thereby quell opposition from the local outfitting industry to the 2011 amendments to § 17-3-16. The preferring of the economic interests of resident outfitters by denying nonresident outfitters the right to compete on equal terms with residents is precisely the type of discrimination based on State citizenship that the Privileges and Immunities Clauses was designed to remedy. *See Hicklin v. Orbeck*, 437 U.S. 518, 525-26 (1978). The Privileges and Immunities Clause would be rendered toothless if a State could rely on the rationale of eliminating competition with residents to justify excluding nonresidents from pursuing a common calling within that State. Stifling competition from nonresidents engaging in a common calling is a not a substantial reason. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 285 n.18 (1985).

Defendant argues that the Court should apply the 2005 Act to foreclose Plaintiffs' Privileges and Immunities Clause challenge. As noted above, the language of the 2005 Act is broad enough to reach outfitting. However, the 2005 Act refers to the Commerce Clause, not the

Privileges and Immunities Clause. Relying on the reasoning of the First Circuit Court of Appeals in *Silver v. Garcia*, 760 F.2d 33, 36-38 (1st Cir. 1985) (rejecting argument that by enacting McCarran-Ferguson Act, Congress withdrew protections afforded by the Privileges and Immunities Clause; observing that "even if it intends to do so, Congress cannot legislate away protections provided by the Constitution"), the Court concludes that Defendant's argument that Congress rendered the Privileges and Immunities Clause inapplicable to State regulation of hunting and outfitting is without merit.

The Court finds that non-corporate Plaintiffs will be irreparably harmed by enforcement of subsection H , ¶¶ (3) through (6), as these Plaintiffs will be precluded from participating in subsection B(1)(a) draw hunts for the 2012-2013 hunting season. Alternately, non-corporate Plaintiff s will be irreparably harmed by enforcement of subsection H, ¶¶ (3) through (6), as they will be subject to ongoing unlawful discrimination on the basis of nonresidency. The Court finds that Defendant will suffer some expense and inconvenience from a preliminary injunction restraining Defendant from enforcing subsection H, ¶¶ (3) through (6), against non-corporate Plaintiffs. That harm can be minimized by careful tailoring of the injunction. To that end, the Court will limit the injunction to the following temporary relief: that Defendant direct the Game & Fish Department's computer personnel to code the Guide ID numbers of Plaintiffs doing business as individuals or unincorporated sole proprietorships to indicate that these Plaintiffs qualify as New Mexico registered outfitters for purposes of the upcoming 2012 computerized draw.[7] The Court will not, at this time, further enjoin Defendant. The Court finds that the harm

---

[7]At the hearing on Plaintiffs' motion, counsel for Defendant pointed out that Plaintiffs evidence did not establish that all Plaintiffs are currently in compliance with the certain requirements of New Mexico law, which Plaintiffs have not challenged. See NMSA 1978, § 17-

11

to Plaintiffs from the denial of an injunction balanced against the harm to Defendant from the granting of the extremely narrow preliminary injunction described in this paragraph favors the granting of a preliminary injunction.

Lastly, although the Court believes that a sweeping preliminary injunction would be adverse to the public interest by disrupting the forthcoming 2012 hunting season, the Court has ordered extremely narrow injunctive relief. While the public has an interest in seeing their will as expressed through their duly elected representatives carried out, "the public has a more profound and long-term interest in upholding an individual's constitutional rights." *Awad*, 2012 WL 50636 *15 (quotation marks omitted). The Court finds that a preliminary injunction limited as noted above is not adverse to the public interest.

**CONCLUSION**

The finds that at least one Plaintiff has Article III standing to assert each of Plaintiffs' claims. The Court, applying the heightened standard applicable to mandatory injunctions, finds that Plaintiffs have satisfied each of the four requirements for obtaining a preliminary injunction.

**IT IS THEREFORE HEREBY ORDERED** that for the reasons set forth above and for the reasons explained at the hearing on March 21, 2012, Plaintiffs' Motion for a Preliminary Injunction is **granted in part and denied in part.**

**IT IS FURTHER ORDERED** that for purposes of draws for hunting tags conducted pursuant to NMSA 1978, § 17-3-16(B)(1)(a) during the remainder of calendar year 2012 Defendant shall treat each named Plaintiff who is an individual or who does business as

---

2A-3. Nothing in this Memorandum Opinion and Order should be construed to prevent Defendant from enforcing against Plaintiffs the non-discriminatory provisions of New Mexico law.

unincorporated sole proprietorship, as a "New Mexico outfitter." Defendant shall modify computer entries or programs if necessary to insure that each named Plaintiff who is an individual or sole proprietorship is treated as a "New Mexico outfitter" for purposes of draws for hunting tags conducted pursuant to NMSA 1978, § 17-3-16(B)(1)(a) during the remainder of calendar year 2012.

**IT IS FURTHER ORDERED** that counsel for Plaintiffs, Jason Bowles and B.J. Crow, shall assist Defendant in determining which Plaintiffs are corporations or LLCs.

**IT IS FURTHER ORDERED** that at this time no relief be afforded Plaintiffs who are corporations or LLCs.

**SO ORDERED this 27th day of March, 2012.**


_____
M. CHRISTINA ARMIJO
UNITED STATES DISTRICT JUDGE